## Case No. 2,451.

### The CARROLL.

### [1 Ben. 286.][1]

District Court, S. D. New York. July, 1867.

COLLISION IN CHESAPEAKE BAY — STEAMER AND SCHOONER MEETING—DUTY OF STEAMER — EVIDENCE.

1. Where a steamer and schooner meeting each other in Chesapeake bay, the schooner bound down the bay with a free wind, but, as she claimed, holding her course, and her course being to westward of that of the steamer, and the steamer, as the vessels approached, put her wheel hard aport and stopped and backed, but a collision occurred: *Held*, that it is the duty of steamers to give way to sailing vessels with a free wind, as well as those close hauled.

2. The vessels having seen each other several miles apart, the collision could only have occurred by gross fault on the part of one or both vessels.

3. The claim of the steamer that she stopped and backed when the schooner was nearly a mile off, bordered on absurdity.

4. Her claim that the schooner when nearly a mile to the westward of the steamer, and nearly abreast of her, suddenly starboarded and went to the eastward to cross the steamer's bows, was also unreasonable. The court was therefore compelled to discard the steamer's theory and accept that of the schooner, which was simple and consistent with one exception.

[Cited in The Excelsior, 12 Fed. 204.]

5. If the schooner was to the westward, and changed her course, as alleged by the steamer, then the order to stop and back the steamer was an error, and that on the other hand, if the schooner was nearly ahead, then the steamer should have starboarded instead of putting her helm hard aport.

6. Very little reliance could be placed upon the testimony of a witness who had contradict-

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

ed himself on cross-examination, whether the discrepancies arose from forgetfulness, disingenuousness or dulness.

In admiralty. This was a suit by Wesley Egbert, master and part owner of the schooner Elijah Shedden, to recover the damages sustained by her in a collision with the steamer Carroll belonging to the Baltimore & Ohio Railroad Co., which occurred on the evening of the 21st of December, 1865. At about half-past seven o'clock that evening, the schooner was bound down Chesapeake bay, before a free wind with her sails wing and wing, at a speed of four or five miles an hour. When off, or a little above the Rappahanoc, she discovered a light which proved to be that of the steamer Carroll, bound up the bay. The vessels were then several miles apart and sailing on nearly opposite and parallel courses. They continued to approach each other until a collision took place, the steamer striking the schooner on her starboard side about twelve feet forward of her taffrail, and the latter sunk in five or six minutes. The weather was clear with a moderately fresh breeze. The steamer also discovered the schooner several miles off.

Three witnesses were examined by the libelants, and they substantially agreed in saying that they first discovered the bright light of the steamer two or two and a half points on their starboard bow, and as it drew nearer they discovered her green light; that the schooner continued her course without change, while the steamer approached, and, when two or three hundred yards from the schooner, suddenly ported her wheel, showing her red light, and struck the schooner as already stated; that the only movement attempted on the schooner was made by her captain after he saw the steamer had changed her course and was coming into the schooner, when he seized the wheel and attempted to throw it astarboard, but that it was too late; that the light of the steamer when first seen was four or five miles off, and that from that time to the collision was twelve or fifteen minutes. These witnesses insisted that from the time they first discovered the Carroll's light, down to the time she changed her course, she was to starboard of the course of the schooner.

On the part of the steamer there were examined, Lennan, her master, Fuller, the second mate, who was on the bridge, Thompson, a seaman, who was with him, and Peters, another seaman. Their claim was, that the schooner's light was seen a little on the steamer's port bow, whereupon the steamer's helm was put aport a little to show her red light; that the vessels then kept on till the schooner was from half a mile to a mile distant when it was discovered that the schooner had changed her course by starboarding her wheel, whereupon the captain of the steamer gave the order at once to put the wheel hard aport, and to

stop and back, but the collision was then inevitable. The reason given by the captain of the steamer, for porting and backing at this time was to stop her way, and throw her bow to port, so as to let the schooner cross his bow if she could; that the action of her propeller, backing on a port helm has the effect to throw her bow to port, while backing on a starboard helm brings her bow to starboard.

Beebe, Dean & Donohue, for libellants. John H. Platt, for complainants.

SHIPMAN, District Judge. After setting forth the testimony of the witnesses at some length, and saying that as the vessels saw each other when several miles apart, no collision could have occurred without great fault on one or both sides, proceeded as follows:

On one point the testimony of the witness Thompson, is confused and inconsistent. He repeats the statement that the steamer was stopped and backed as soon as the order to hard aport was given, which was when the vessels were a mile apart as near as he can judge. On the cross-examination he distinctly states that the steamer was not stopped and backed until a considerable portion of this mile had been run over, and that they were very close when this order was given. Very little reliance can be placed upon testimony of this character, whether such glaring discrepancies arise from forgetfulness, disingenuousness or dullness.

The impression derived from reading the first part of Peters' testimony is that the first order to port and then steady, was given when the schooner's green light was discovered, when, as he thinks, she was three-quarters of a mile or a mile from the steamer, and that the latter after falling off a point ran some little time before the order to hard a-port was given. But in the subsequent part of his statement he proceeds upon the idea that the first order to port was given when the schooner's light was first discovered, about four miles off. He says, however, that the order to stop and back was given immediately on the order to hard a-port. Captain Lennan, and Fuller, the second mate, confirm him on this point, and the former agrees that at that time the vessels were half or three-quarters of a mile apart; that is, on a diagonal line drawn from one to the other.

None of the witnesses for the claimants charge the schooner with changing her course from the time she was discovered till she had reached this point about three-quarters of a mile off from the steamer, when she showed her green light, and the steamer put her wheel hard a-port, and rang to stop and back.

Assuming, then, that the first change charged on the schooner was made as stated by the claimants' witnesses, let us see what

must have been the relative positions of the vessels. They all agree in placing the schooner well to the westward or port of the track of the steamer when the former was discovered. They agree that no change took place till she had approached within about a mile. As they were both sailing on nearly parallel courses then, and the steamer immediately ported a point, and held that course, diverging from the track of the schooner for three or four minutes, it follows that the schooner, when she changed her course, must have been over a mile, or at least a full mile, to the westward of the steamer's course; in other words, she must have been off to the westward at least five points on the steamer's port bow, and drawing down abeam of her. Now if the schooner's helm had been put hard a-starboard at this point, giving her a course at right angles to that of the steamer, and the latter had kept on, it is very doubtful if a collision could have taken place. The Carroll was making greater speed than the schooner, and would in all probability have reached and passed the point of intersection before the schooner reached it. The distance the vessels had to travel was about equal. But it is not necessary to apply this test, for it is clear on the evidence in behalf of the Carroll, that, whatever change she then made, she did not hard a-starboard, thus approaching the steamer's track at right angles. This is plain from the fact insisted on that the steamer, as soon as the schooner changed, reversed her engine, and soon lost headway. Yet the schooner came down and struck the steamer's bows. It follows irresistibly that the schooner, from the point where her alleged change of direction took place, must have sailed on a diagonal line to the steamer's track; and had the latter kept her course, even without any change, she would have clearly passed the point of intersection before the schooner got there. Such a change of the schooner involved no risk of collision. Had the steamer kept on, the schooner would have passed under her stern with safety. On the Carroll's own showing, all she did to avert the collision was, when she saw the schooner coming toward her, to stop in her track and let the latter run down to her, and this she did when the schooner was three-quarters of a mile or a mile off! Viewing the evidence for the Carroll in any light in which I have been able to place it, I fail to see that it furnishes a satisfactory explanation of the collision, or one which either disproves that given by the schooner or vindicates the steamer. The theory of the latter is an impossible one, and the assertion that she stopped and backed when the schooner was nearly a mile off borders on absurdity. Equally unreasonable is the claim that the schooner, when off nearly a mile to the westward of the track of the steamer, and nearly down to her, suddenly starboarded and went to the eastward to cross her bows. The court is therefore compelled to

discard the theory offered by the Carroll. and accept that of the schooner, which is simple and consistent, except that part of it which places the course of the steamer considerably to the westward of the track of the schooner.

It is useless to speculate on the subject, but it looks very much, in view of the evidence as a whole, as if these vessels approached each other nearly head and head for several miles, without any apprehension of danger, when the steamer, on discovering the schooner's green light, suddenly put her wheel hard a-port, under some mistake as to the relative positions of the vessels. This view of the courses of the vessels and their relative positions is strengthened by the statement of Thompson, who says that when he first discovered the schooner's red light, she bore nearly north, as he thinks; and by Peters, who states that when he saw the schooner's green light he thinks he saw her red light also. These two statements are consistent with the claim that the schooner made no change in her course. Whether the steamer was misled by some one of the numerous lights, which one of her witnesses says were ahead before she came up near the schooner, or whether the order to hard to port was inadvertently given on suddenly discovering that the schooner was near, it is impossible to say; but it is clear that if the schooner was to the westward, in the position assigned her by the steamer, when the former made her alleged change of course, then the order to hard a-port was correct; but the order to stop and back was an error, for had she kept on hard a-port, she would have cleared the schooner with perfect ease. If, on the other hand, the schooner's green light was nearly ahead, or a little on the Carroll's port bow, then the latter should have starboarded, for, according to the Carroll's own evidence, the schooner was nearly a mile distant, running on a starboard helm. The vessels would have then passed each to the left of the other.

But, as already intimated, the court is compelled to accept the theory of the libellant's witnesses, especially as to the course and management of the schooner; and as she did not, according to their statement, change her course, the steamer must be held in fault. It was her duty to take early measures and clear the schooner. It is now settled by the courts of this country that it is the duty of steamers to give way to sailing vessels with a free wind, as well as those close hauled.

Let a decree be entered for the libellant, with an order of reference to a commissioner to compute the damages.

[NOTE. For hearing on exceptions by the respondents to the commissioner's report, see Egbert v. Baltimore & O. R. Co., Case No. 4,305.]